**Mary Anne Davies**, Bar No. 14965
**Lakshmi Vanderwerf**, Bar No. 17336
**Maya V. Anderson,** Bar No. 17559
**Nate Crippes**, Bar No. 14622
**DISABILITY LAW CENTER**
960 S Main Street
Salt Lake City, Utah 84101
Phone: (801) 363-1347
Email:
mdavies@disabilitylawcenter.org
lvanderwerf@disabilitylawcenter.org
mvanderson@disabilitylawcenter.org
ncrippes@disabilitylawcenter.org

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **MARIA COTRINA,**<br><br>    Plaintiff,<br><br>vs.<br><br>**COOKIETREE LLC,**<br><br>    Defendant. | **COMPLAINT**<br>**JURY DEMANDED**<br><br>Case No. 2:23-cv-00769-DAO<br>Magistrate Judge: Daphne A. Oberg |

Plaintiff Maria Cotrina ("Plaintiff" or "Ms. Cotrina"), by her attorneys, files this Complaint against Defendant CookieTree LLC ("Defendant" or "CookieTree") and alleges as follows:

### NATURE OF THE ACTION

1. This is a disability discrimination action brought by Ms. Cotrina under the Americans with Disabilities Amendments Act of 2008 ("ADA"), codified at 42 U.S.C. §12101 *et seq.* concerning harassment under 42 U.S.C. § 12203(b), disparate treatment under 42. U.S.C. §

121112(a), failure to accommodate under 42 U.S.C. § 12112(b)(5)(A), and retaliation under 42 U.S.C. § 12203(a) by CookieTree during Ms. Cotrina's employment as a production line assistant.

2. Ms. Cotrina seeks injunctive relief prohibiting CookieTree from continuing its misconduct in violation of the ADA and prohibiting Defendant from engaging in similar misconduct in the future.

3. Ms. Cotrina seeks monetary relief as compensation for CookieTree's violation of her rights under the ADA pursuant to 42 U.S.C. § 12188.

4. Ms. Cotrina seeks attorney fees and court costs pursuant to 42 U.S.C. § 12205.

## THE PARTIES

5. Defendant CookieTree LLC is a corporation organized under the laws of Texas, with headquarters in Salt Lake City, Utah.

6. CookieTree employed more than fifteen employees at all relevant times.

7. Ms. Cotrina is an individual with psychiatric diagnoses which constitute disabilities, including schizoaffective disorder, anxiety, and depression. Ms. Cotrina has also suffered a complex tear of her meniscus resulting in a physical impairment that constitutes a disability.

8. At all times relevant to this Complaint, Ms. Cotrina resided in Utah.

9. At all times relevant to this Complaint, Ms. Cotrina worked for CookieTree at 4010 West Advantage Circle Salt Lake City, UT 84104.

## JURISDICTION AND VENUE

10. Ms. Cotrina has exhausted administrative remedies, and now seeks relief in Federal Court.

11. After submitting a timely Charge of Discrimination with the Utah Antidiscrimination and Labor Division ("UALD"), Ms. Cotrina received a Notice of a Right to Sue from the Equal Employment Opportunity Commission ("EEOC") electronic portal on July 27, 2023.

12. This Court has jurisdiction to hear and decide Ms. Cotrina's ADA claims pursuant to §1331 of Title 28 of the U.S. Code and the ADA, 42 U.S.C. §12101–12213.

13. This Court has personal jurisdiction over Defendant because Defendant has headquarters and conducts business in the State of Utah.

14. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) because the Defendant conducts business in this district.

## STATEMENT OF FACTS

### A.  2006-2015

15. Defendant CookieTree LLC ("CookieTree") is a business located in Salt Lake City, Utah.

16. Ms. Cotrina is a woman with schizoaffective disorder (bipolar type), anxiety, depression, and insomnia. Ms. Cotrina also suffered a tear of her meniscus while working for Defendant.

17. Ms. Cotrina's conditions are mental and physical impairments that substantially limit several of her major life activities, including but not limited to, communicating with others, concentrating, sleeping, standing and sitting.

18. On or about February 26, 2007, Ms. Cotrina began working directly for Defendant as a production line assistant, where her responsibilities included feeding the trays of cookies to the oven conveyor, removing trays of frozen cookies from racks and placing them on a de-racking conveyor, inspecting and loading cookies into packaging machines, placing packages of cookies

in boxes, inspecting cookie packages for defects, and other tasks that contributed to the smooth operation of the cookie packaging process.

19. CookieTree was aware of Ms. Cotrina's mental conditions which were disclosed in many Family and Medical Leave Act ("FMLA") and reasonable accommodation requests by her medical providers over the years.

20. In August 2013, Ms. Cotrina's medical provider Ellois Bailey, APRN ("Ms. Bailey") requested 3-4 approved absences per month and disclosed Ms. Cotrina's depression and anxiety with psychotic features when off medications, noting that it was a lifelong condition.

21. On multiple occasions spanning from 2015 through 2017, Ms. Cotrina spoke to human resources representative Paul Ledesma ("Mr. Ledesma") and human resources supervisor Craig Sandberg ("Mr. Sandberg") to disclose her mental health conditions and medications. At times Ms. Cotrina spoke with the human resources administrative assistant regarding her mental health conditions (name unknown).

22. From 2006 until 2015, Ms. Cotrina worked peacefully with her coworkers and performed every aspect of the production line assistant position.

### B. 2015 - 2017

23. In approximately May 2015, Ms. Cotrina was supervised by the floor supervisor Felipe Martinez ("Mr. Martinez") and line lead Colton Goodfellow ("Mr. Goodfellow").

24. Carlos Navarette ("Mr. Navarette") was in training to become a line lead. Mr. Navarette performed the production line assistant position alongside Ms. Cotrina and occasionally supervised Ms. Cotrina as a line lead when Mr. Goodfellow was not working.

COMPLAINT
PAGE | 4

25. Prior to Mr. Navarette's supervision, production line assistants were allowed to speak in their native languages Mr. Navarette announced that all production line assistants were required to speak English at all times.

26. On or about May 13, 2015, Ms. Cotrina's medical provider, ElLois Bailey ("Ms. Bailey") requested a reasonable accommodation for Ms. Cotrina to be allowed to speak Spanish on the production floor during times of stress. Ms. Bailey disclosed Ms. Cotrina's diagnosis of anxiety and other mental health conditions.

27. Following Ms. Cotrina's request for reasonable accommodation in May 2015, all production line assistants attended a training session in which they were informed that instead of always speaking English as previously directed by Mr. Navarette, they would be allowed to speak in their native languages but were required to report to Mr. Navarette in English.

28. On multiple occasions, Ms. Cotrina asked to leave the line to use the restroom because she was on a medication which created a side effect of needing to use the restroom urgently and without warning. Mr. Martinez and Mr. Navarette often denied Ms. Cotrina permission to leave the line and use the restroom.

29. On one occasion, Ms. Cotrina yelled at Mr. Martinez that she was forced to defecate in her clothes because he would not allow her to leave to the restroom. Ms. Cotrina left the line against Mr. Martinez's orders to use the restroom. When Ms. Cotrina returned from the restroom, Mr. Martinez took her to the human resources office to have a disciplinary incident report made against her. Mr. Sandberg informed Ms. Cotrina that there would not be a disciplinary incident report made against her and that she would be allowed to use the restroom as needed.

30. Mr. Martinez and Mr. Navarette's comments and treatment of Ms. Cotrina were detrimental to her mental health.

31. On or about February 11, 2016, Ms. Bailey submitted an FMLA form to CookieTree which again requested 2-3 days off per month for Ms. Cotrina and limited Ms. Cotrina's work hours to four days per week or forty hours per week.

32. Ms. Cotrina submitted reasonable accommodation requests in 2010, 2012, 2013, and 2016 for the same or similar reasonable accommodations of excused absences and limited hours because she was regularly scheduled for long hours and not permitted to use time off throughout her employment.

### C. 2017 to Present

33. On or about February 24, 2017, Ms. Cotrina suffered an on-the-job knee injury.

34. Immediately she asked Mr. Martinez for help. She asked to leave work to go to the doctor. Mr. Martinez directed Ms. Cotrina to speak with her line lead, Mr. Goodfellow.

35. Ms. Cotrina verbally informed Mr. Goodfellow of her injury and asked to leave work to go to the doctor. Mr. Goodfellow was on break and said that he would speak to her when his break finished.

36. When Mr. Goodfellow returned from break, Ms. Cotrina told Mr. Goodfellow that she was in pain and needed a doctor. She also asked Mr. Goodfellow for pain medication and ice. Ms. Cotrina had previously seen a coworker sustain an on-the-job injury and receive pain medication (ibuprofen), ice, and be allowed to leave work to see the doctor.

37. Mr. Goodfellow replied "Are you crazy? Go back to work." Mr. Goodfellow told her that if she left, she would receive a disciplinary incident report.

38. Mr. Goodfellow brought Ms. Cotrina a workplace injury form and told her it needed her signature. Mr. Goodfellow did not allow her to read the form. Ms. Cotrina signed the form.

39. Ms. Cotrina was assigned to work at the ovens, a position which required frequent standing and squatting. Usually, the production line assistants would rotate between the various positions on the packaging line and ovens at each break. Due to understaffing, Ms. Cotrina was assigned to the strenuous duties at the ovens all day.

40. Ms. Cotrina asked if she could be moved to one of the less strenuous positions for the remainder of her shift because she was in pain. Mr. Goodfellow told her to "stay there" and that "maybe [the pain would] go away."

41. After speaking with Mr. Goodfellow, Ms. Cotrina promptly notified Mr. Ledesma and Mr. Sandberg onsite about her injury, explaining that she was in pain and needed a doctor. They told her to return to work.

42. Mr. Martinez and Mr. Navarette began telling other employees that Ms. Cotrina is crazy, that she is on antipsychotic medications, and that other employees should not believe what she says.

43. Mr. Martinez and Mr. Navarette called Ms. Cotrina crazy on a daily basis and encouraged other coworkers to do the same. The conduct was so frequent, Ms. Cotrina cannot remember a day at work in which she was not called crazy.

44. On or about March 3, 2017, Ms. Cotrina had radiographs taken of her knee.

45. On or about March 8, 2017, Ms. Cotrina had an appointment with her own doctor, Dr. Miguel Villalobos ("Dr. Villalobos"). Dr. Villalobos assessed Ms. Cotrina's knee and referred her to physical therapy.

46. On or about March 15, 2017, Ms. Cotrina had an MRI of her knee done by Dr. Michael Richardson ("Dr. Richardson").

47. Ms. Cotrina showed the MRI images to Mr. Goodfellow and Mr. Martinez, who responded that CookieTree would not pay for any worker's compensation claims because they had very good lawyers and nobody would believe her because she is crazy.

48. Ms. Cotrina's former manager Buddy Swarzmiller ("Mr. Swarzmiller") spoke with Ms. Cotrina during early March 2017 and asked why she had not been referred to a worker's compensation doctor. After Mr. Swarzmiller was aware of Ms. Cotrina's injury, he

49. Prior to her appointment with the worker's compensation doctor, Ms. Cotrina asked Mr. Goodfellow and Mr. Martinez on several occasions for permission to take brief breaks to ice her knee. These requests were denied, and Ms. Cotrina was forced to continue working.

50. Ms. Cotrina's knee injury caused her so much pain that she at times she needed to hold on to the wall while walking to navigate the office. Mr. Martinez and Mr. Navarrette made fun of how Ms. Cotrina walked during this time.

51. On or about March 17, 2017, Ms. Cotrina visited the company's contracted medical provider, Dr. Mark Anderson ("Dr. Anderson"). Dr. Anderson diagnosed osteoarthritis and a tear of the meniscus.

52. Dr. Anderson placed Ms. Cotrina on the following restrictions: sitting during 90% of her working hours, no squatting, and no kneeling.

53. Ms. Cotrina was assigned to clerical work in the office as a reasonable accommodation.

54. After several days Ms. Cotrina was told that she was required to return to the production floor.

55. Ms. Cotrina returned to the production line, where Mr. Goodfellow provided her with a chair as a reasonable accommodation. However, sitting on the chair caused Ms. Cotrina's knee repeatedly hit the machine in front of her, causing her pain.

56. Ms. Cotrina complained to Mr. Goodfellow about her increased pain and cried.

57. She asked to be removed from the production line and to be provided with an alternative position, but Mr. Goodfellow told her that he was her supervisor and that she had to do what he said and stay at the production line.

58. On or about March 23, 2017, Ms. Cotrina asked Mr. Goodfellow and Mr. Martinez if she could go to an appointment with Ms. Bailey because her mental health was suffering. Mr. Goodfellow and Mr. Martinez denied this request and told Ms. Cotrina she would be fired if she left and that CookieTree had good attorneys, she would lose her case, and that CookieTree would not pay for her medical costs related to her knee injury.

59. Ms. Cotrina felt she had no choice but to go to her doctor and left for the day. Based on the statements from Mr. Goodfellow and Mr. Martinez that Ms. Cotrina would be fired if she went to her medical appointment, Ms. Cotrina understood that she had been fired.

60. On or about March 23, 2017, Ms. Bailey recommended Ms. Cotrina take leave from work.

COMPLAINT
PAGE | 9

61. On or about March 29, 2017, Ms. Cotrina provided a handwritten note from her physical therapist Dr. Charlene R. Brenkmann ("Dr. Brenkmann") stating that Ms. Cotrina should not do any physical therapy until after receiving surgical treatment.

62. On or about April 5, 2017, Ms. Cotrina and her medical provider Ms. Bailey filled out a request for FMLA based on "mental health destabilization." Ms. Cotrina was approved for leave from April 10, 2017, until April 21, 2017.

63. On or about April 7, 2017, Ms. Bailey contacted CookieTree human resources and informed the department that the harassment Ms. Cotrina received from her coworkers had "completely destabilized" her mental health conditions.

64. On or about April 21, 2017, Ms. Bailey provided documentation asking to extend FMLA to June 1, 2017, explaining that Ms. Cotrina's mental health condition continued to worsen and that they were "considering hospitalization."

65. Ms. Bailey helped Ms. Cotrina to apply for short term disability while she was out on leave. Ms. Cotrina had not used short term disability before and believed she was requesting social security disability insurance.

66. On or about June 7, 2017, Ms. Cotrina filed a charge of discrimination with the Utah Anti-discrimination and Labor Division against CookieTree alleging she had been unlawfully terminated.

67. On June 9, 2017, Ms. Cotrina received a telephone call from human resources asking her about how many tickets to an amusement park for employee appreciation day she would like. Ms. Cotrina attempted to find out the status of her short-term disability leave request during this call, but was unable to get an answer from the human resources representative (name unknown).

68. On or about June 9, 2017, CookieTree granted an additional ninety days of unpaid job-protected leave as a reasonable accommodation of her disability. However, Ms. Cotrina did not request this reasonable accommodation and did not receive notice that it had been granted.

69. On or about July 9, 2017, Ms. Cotrina began long term disability leave through Lincoln Financial Group, a benefit she received as part of her employment with CookieTree.

70. On or about July 11, 2017, Ms. Cotrina had knee surgery with Dr. Pilar Dechet.

71. On December 26, 2017, Mr. Sandberg sent Ms. Cotrina a letter informing her that failure to return to work by January 26, 2018, would result in termination. This letter was sent to 4358 So. Cherry View Drive, West Valley City, Utah, 84120. Ms. Cotrina has never resided at this address, received mail at this address, or provided CookieTree with this address.

72. On or about January 29, 2018, CookieTree terminated Ms. Cotrina's employment.

73. On or about May 9, 2018, after her termination, Ms. Cotrina received the December 26, 2017, letter from CookieTree. Ms. Cotrina was surprised to learn that her employment ended on January 29, 2018, because she understood her employment was terminated by CookieTree on or about March 23, 2017.

74. Ms. Cotrina's long term disability benefits expired in approximately June 2019.

75. Ms. Cotrina has suffered great emotional distress as a result of CookieTree's discriminatory conduct and failure to accommodate.

76. Because she was forced to keep working with an injured knee, Ms. Cotrina continues to experience physical pain.

77. Ms. Cotrina has not worked since leaving her employment with CookieTree.

78. Ms. Cotrina's current medications, which are now necessary due to her diminished mental health and continuing knee pain, have severely affected her quality of life.

79. As a result, Ms. Cotrina's driving privileges have been revoked, and she experiences increased difficulty sleeping and communicating with others.

80. Additionally, Ms. Cotrina has suffered great financial distress as a result of CookieTree's discriminatory conduct and failure to accommodate.

81. Ms. Cotrina's knee injury and mental health have derailed her plans for retirement.

## FIRST CLAIM FOR RELIEF

### Disability Discrimination (Harassment) in Violation of the ADA-AA

Ms. Cotrina re-alleges and incorporates by reference the allegations set forth in the paragraphs above and further alleges as follows:

82. Ms. Cotrina is an individual with disabilities as defined by the ADA and has a record of such impairments. Her mental conditions substantially affect her brain function, concentration, and thinking. Her knee injury was a severe injury which substantially affected her ability to stand and squat.

83. Defendant was aware of Ms. Cotrina's medical conditions at all relevant times.

84. Defendant's employees created a hostile working environment by calling her "crazy" on a daily basis, telling her coworkers not to listen to her, refusing to let her use the bathroom, and discouraging her from pursuing worker's compensation because of her mental conditions.

85. The harassment was based on Ms. Cotrina's disability, because the comments explicitly reference her mental conditions and the harassment began shortly after Ms. Cotrina's reasonable

accommodation request in 2015 which was the first reasonable accommodation request directly involving Mr. Martinez.

86. The harassment created a hostile work environment that exacerbated Ms. Cotrina's mental health conditions, forcing her to take unpaid leave which eventually resulted in her termination.

87. Defendant knew or should have known about the ongoing harassment, because Ms. Cotrina complained to human resources about the harassment on several occasions. The perpetrators of the harassment included Mr. Goodfellow and Mr. Martinez who were in supervisory positions above Ms. Cotrina.

## SECOND CLAIM FOR RELIEF

**Disability Discrimination (Failure to Provide Reasonable Accommodations) in Violation of the ADA**

Ms. Cotrina incorporates herein by reference all allegations made in previous paragraphs, and further alleges as follows:

88. Ms. Cotrina is an individual with disabilities as defined by the ADA, as explained above.

89. Ms. Cotrina could perform the essential functions of her position with or without reasonable accommodations. Prior to her knee injury in February 2017, she had worked as a CookieTree employee for ten years and performed every aspect of her position.

90. Following her knee injury, Ms. Cotrina requested several reasonable accommodations including, but not limited to, asking for pain medication, requesting to see a doctor, requesting breaks to ice her swelling knee, sitting for 90% of her working period, and asking to not sit at the production line.

91. Defendant's failure to accommodate Ms. Cotrina includes but is not limited to denying her request to see a doctor, refusing to give her pain medication, and preventing her from taking breaks to ice her knee.

92. Defendant gave Ms. Cotrina a chair to accommodate her standing restrictions as recommended by Dr. Anderson. However, this was an ineffective accommodation, because it only further aggravated Ms. Cotrina's knee pain and Ms. Cotrina was not provided with any other reasonable accommodation despite her request to be moved off the production line.

93. Ms. Cotrina suffered adverse employment actions as a direct result of Defendant's failure to provide reasonable accommodations, including, but not limited to, aggravated knee pain that led to eventual surgery; lost wages; and ultimately the termination of her employment.

### THIRD CLAIM FOR RELIEF

**Disability Discrimination (Wrongful Termination) in Violation of the ADA**

Ms. Cotrina re-alleges and incorporates by reference the allegations set forth in the paragraphs above and further alleges as follows:

94. Ms. Cotrina is an individual with disabilities as defined by the ADA, as explained above.

95. Ms. Cotrina was qualified to perform the essential functions of a "line associate."

96. Defendant was aware of Ms. Cotrina's disabilities due to many reasonable accommodation requests made throughout the course of her employment.

97. Ms. Cotrina was terminated from her employment because of her disabilities. She requested to see her mental health provider because of severe symptoms. Ms. Cotrina was told

she would be fired if she left work for this appointment. Ms. Cotrina felt she had to leave and understood she had been fired from her position.

98. Ms. Cotrina later learned that CookieTree gave her unpaid leave that she had not requested and terminated her after Mr. Sandberg sent a letter to the wrong address.

99. Defendant's unlawful acts were done with malice or reckless indifference to Ms. Cotrina's rights.

## FOURTH CLAIM FOR RELIEF

*Disability Discrimination (Retaliation) in Violation of the ADA*

Ms. Cotrina re-alleges and incorporates by reference the allegations set forth in the paragraphs above and further alleges as follows:

100. The ADA prohibits retaliation against any employee for engaging in a protected activity such as requesting a reasonable accommodation and/or objecting to unlawful disability discrimination.

101. Ms. Cotrina engaged in protected activities when she requested reasonable accommodations for her knee pain, including to take pain medication and to leave work to see a doctor.

102. Ms. Cotrina also engaged in a protected activity when she reported her team leads' harassing comments regarding her disability to human resources.

103. Ms. Cotrina was engaged in protected activity when she requested to see her mental health provider on or about March 23, 2017.

104. Ms. Cotrina was engaged in a protected activity her mental health provider complained of harassment to CookieTree on our about April 7, 2017 and requested FMLA leave on Ms. Cotrina's behalf.

105. Ms. Cotrina engaged in a protected activity when she filed a charge of discrimination with the Utah Anti-Discrimination and Labor Division on or about June 7, 2017.

106. Ms. Cotrina was subject to an adverse employment action when she was terminated from her job on or about March 23, 2017, and again on January 29, 2018 when CookieTree asserts Ms. Cotrina was terminated from her employment.

107. A causal nexus exists between Ms. Cotrina's protected activities and the adverse employment action. Defendant's refusal to grant Ms. Cotrina her requested accommodations created the intolerable work conditions that led to the destabilization of her mental health and the aggravation of her knee condition, which in turn led to her termination. Defendant's refusal to take Ms. Cotrina's complaints of harassment and discrimination seriously led to the destabilization of her mental health, and her subsequent leave and termination.

## **PRAYER FOR RELIEF**

WHEREFORE, these premises considered, Plaintiff MARIA COTRINA respectfully requests that this Honorable Court:

1. Enter a permanent injunction enjoining Defendant from engaging in practices that discriminate based on disability;

2. Enter an order requiring Defendant to make Ms. Cotrina whole by placing her in the position she would have occupied in the absence of discrimination and retaliation, including back pay, front pay, interest, and other benefits that would have accrued;

3. Enter an order requiring Defendant to pay compensatory and punitive damages as a jury may assess;

4. Award Ms. Cotrina her reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §12205; and

5. Award such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby requests a jury trial.

RESPECTFULLY SUBMITTED this the 24TH day of OCTOBER, 2023.

By: /s/Lakshmi Vanderwerf
LAKSHMI VANDERWERF
**DISABILITY LAW CENTER**