**Mary Anne Davies**, Bar No. 14965
**Lakshmi Vanderwerf**, Bar No. 17336
**Maya V. Anderson**, Bar No. 17559
**Nate Crippes**, Bar No. 14622
**DISABILITY LAW CENTER**
960 S Main Street
Salt Lake City, Utah 84101
Phone: (801) 363-1347
Email:
mdavies@disabilitylawcenter.org
lvanderwerf@disabilitylawcenter.org
mvanderson@disabilitylawcenter.org
ncrippes@disabilitylawcenter.org

*Attorneys for Plaintiff*

---

# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARIA COTRINA,<br><br>    Plaintiff,<br><br>vs.<br><br>COOKIETREE LLC,<br><br>    Defendant. | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Case No. 2:23-cv-00769-DAO<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Maria Cotrina, through counsel, submits this motion pursuant to Fed. R. Civ. P. 55(b)(2), requesting that the Court enter Default Judgment against Defendant Cookietree, LLC.

Plaintiff moves the Court for:

1. Entry of $115,213.60 in damages representing back pay; and

2. Entry of $200,000.00 in damages, representing compensatory and punitive damages.

In the alternative, Plaintiff requests a hearing on this motion. Pursuant to Fed. R. Civ. P.

54(d)(2) and DUCivR 54-2, Plaintiff will submit a motion for attorney fees and costs within 14 days of a final order. Nothing in this motion waives attorney fees under 42 U.S.C. §12205.

### PROCEDURAL BACKGROUND

In 2017, Ms. Cotrina filed a charge of discrimination at the Utah Antidiscrimination and Labor Division ("UALD"). *See Exhibit A.* In 2019, the UALD issued a reasonable cause finding. Defendant appealed the UALD finding. *See Exhibit B.* The Equal Employment Opportunities Commission ("EEOC") issued a Right to Sue Notice on July 27, 2023. *Exhibit C.* Plaintiff filed her Complaint on October 24, 2023. A Summons and Complaint were served on Defendant on October 26, 2023 and Defendant failed to respond. On December 12, 2023, the Clerk of the Court issued a Certificate of Default against the Defendant. (Dkt. #7)

### DEFAULT JUDGMENT STANDARD

Fed. R. Civ. P. 55(b)(2) permits this Court to enter judgment against a defendant whose default has been entered. Cookietree LLC, by defaulting "admits the plaintiff's well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts thus established." *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (*quoting Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied."). "It remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action" after default is entered. *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). The complaint must contain sufficient factual matter, accepted as true, to show that the claim is plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Because the facts pled by Ms. Cotrina's Complaint sufficiently support a finding of liability, the Court may enter its default judgment.

Once this Court affirms liability on the undisputed claims, it must turn its attention to evaluating the appropriate award amount. A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." F. R. Civ. P. 54(c). Ms. Cotrina's Complaint requested injunctive relief, wage-based damages including back pay, front pay, interest and other benefits, compensatory and punitive damages, and other equitable relief.

The Court is not required to hold an evidentiary hearing and is able to order a default judgment "where all essential evidence was already of record." *S.E.C. v Smyth*, 420 F.3d 1225, 1233 (11th Cir. 2005) ("The SEC is correct that a hearing is not *always* required in cases like this one."). "To award damages [under Rule 55(b)(2)], it is not necessary for a court to hold a hearing; instead a court may rely upon affidavits and documentary evidence." *Overcash v. United Abstract Group, Inc.*, 549 F.Supp.2d 193, 196 (N.D.N.Y.2008). *See also Advanced Optics Elecs., Inc. v. Robins*, 769 F.Supp.2d 1285, 1303–1304 (D.N.M.2010) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.") (internal quotation marks and citations omitted); *Seme v. E & H Prof'l Sec. Co.*, No. 08–cv–01569–RPM–KMT, 2010 WL 1553786, at *11 (D.Colo. Mar. 19, 2010) ("In ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment.") (citation omitted).

Ms. Cotrina has presented all essential evidence to the weight and calculation of damages in the attached exhibits and affidavits. Affidavits in Spanish have been presented in the original and an English translation.

### PLAINTIFF'S WELL-PLED ALLEGATIONS PROVE LIABILITY

Ms. Cotrina brought four claims upon which relief may be granted. Each of these claims is supported by a sufficient factual basis for this Court to award relief.

### Threshold Issues

Cookietree, LLC is a covered employer, to whom the ADA applies based on the number of employees. 42 U.S. Code § 12111(5)(A); Compl. Dkt. #2 ¶ 6; *Exhibit A* (stating that Cookietree Inc. had 201-500 employees); *M. Cotrina Affidavit* ¶ 4 (stating that Cookietree Inc. had more than 200 employees).

It is an element of Ms. Cotrina's claims of harassment, failure to accommodate, and wrongful termination that she is disabled within the meaning of the ADA. She sufficiently alleged disability as defined within the ADA, including schizoaffective disorder, anxiety, depression, insomnia, and a tear of the meniscus. *See* Compl. Dkt. #2 ¶16, 17, 19–21, 26, 28–33, 35–36, 41, 45, 50–52, 56–58, 60–65, 76. These are mental and physical impairments which substantially limit her major life activities, including thinking, concentration, brain function, squatting, and standing. 42 U.S.C. §§ 12102(1)(A); 42 U.S.C. §§ 12102(2)(A-B). ¶¶16, 17, 19–21, 26, 28–33, 35–36, 41, 45, 50–52, 56–58, 60–65, 76.

### Harassment

Ms. Cotrina brought a claim for harassment. The elements of a harassment claim are: (1)

the plaintiff is "disabled" as defined by the ADA; (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on the alleged disability; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). This Court should evaluate "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Systems*, 510 U.S. 17, 23 (1993)) (internal quotation marks omitted).

Plaintiff sufficiently alleged that she was subject to unwelcome harassment. She was called 'crazy' on a daily basis, her use of anti-psychotic medication was revealed to her coworkers, and she was deliberately assigned to strenuous activities to exacerbate her disabilities. *See* Compl. Dkt. #2 at ¶¶28–30, 37, 39, 40–43, 47, 57; *M. Cotrina Affidavit* ¶ 19.28–30, 37, 39, 40–43, 47, 57. The harassment was based on her disability because the term 'crazy' is used to malign mental health conditions. Her supervisors assigned her tasks that required squatting and bending, activities that contraindicated requested meniscal tear accommodations. *See* Compl. Dkt. #2 at ¶¶ 28–30, 37, 39, 40, 42–43, 47, 55–59.

The harassment was so severe and pervasive that it altered her working conditions. Ms. Cotrina no longer felt safe in her working environment which destabilized her mental health. *See* Compl. Dkt. #2 at ¶¶ 29–30, 37, 39–43, 47, 49–50, 55–58, 62–64, 75–76; *Dr. Bailey Affidavit* ¶ 18-26.

MOTION FOR DEFAULT JUDGMENT  
PAGE | 5

**Failure to Accommodate**

The elements of failure to accommodate under the ADA are that: (1) the employee is disabled within the meaning of the ADA; (2) she can perform, with or without reasonable accommodation, the essential functions of the job; (3) she requested a plausibly reasonable accommodation which the employer refused to provide. *See Punt v. Kelly Servs.*, 862 F.3d 1040, 1048–50 (10th Cir. 2017).

Ms. Cotrina could perform the essential functions of her job and successfully performed her position since 2007. *See* Compl. Dkt. #2 at ¶¶ 18, 22, 26–27, 29, 53; *M. Cotrina Affidavit* ¶ 10; *Dr. Bailey Affidavit* ¶ 16-17, 19. She made verbal requests and her medical providers made written requests for reasonable accommodation including time off for medical care and mobility restrictions which Defendant refused to provide. An accommodation of clerical work was rescinded while Ms. Cotrina still required accommodation. Ms. Cotrina's supervisors verbally denied her requests for reasonable accommodation to seek medical care, which ultimately led to her termination. *See* Compl. Dkt. #2 at ¶¶ 28–29, 33–41, 49, 52–58, 76.

**Wrongful Termination**

The elements of Ms. Cotrina's wrongful termination claim are: (1) The employee is disabled within the meaning of the ADA; (2) she can perform, either with or without reasonable accommodation, the essential functions of the job; and (3) the employer terminated her because of her disability. 42 USC § 12112(a); *See Carter v. Pathfinder Energy Servs.*, 662 F.3d 1134, 1142 (10th Cir. 2011).

Cookietree, LLC terminated Ms. Cotrina because of her disability. Mr. Goodfellow and

Mr. Martinez told Ms. Cotrina she would be terminated if she left work to seek medical care. *M. Cotrina Affidavit* ¶ 22. Ms. Contrina left work to seek medical care with the understanding she had been terminated. Ms. Cotrina was terminated after Cookietree sent a request for return to work to an address which Ms. Cotrina has never resided at or received mail at. *See* Compl. Dkt. #2 at ¶¶ 19–21, 26, 31–32, 47, 58, 71–72; *M. Cotrina Affidavit* ¶ 23.

### Retaliation

Plaintiff established a claim of Retaliation. 42 USC § 12112(b)(5)(A). The elements of Ms. Cotrina's retaliation claim are: (1) she engaged in a protected activity, (2) she was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity, and (3) there was a causal connection between the protected activity and the adverse employment action. *See Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186–87 (10th Cir. 2016).

Ms. Cotrina engaged in protected activity by requesting reasonable accommodation, making complaints at work and filing a charge of discrimination. *See, e.g., Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007); *See* Compl. Dkt. #2 ¶¶ 28–29, 33–41, 49, 52–58, 66, 76.

Ms. Cotrina was subject to adverse employment action when she was terminated from her position at Cookietree. *See* Compl. Dkt. #2 at ¶¶ 58–59, 71–72; *M. Cotrina Affidavit* ¶ 13-19. A causal connection exists because Ms. Cotrina was terminated during the UALD administrative complaint process. *See* Compl. Dkt. #2 at ¶¶ 52–59, 71–73.

### Wage Based Damages

The ADA allows relief in the form of an award of back pay and benefits. *See* 42 U.S.C. secs 2000e-5(g), 12117(a); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975). Back pay

is the amount of money a plaintiff would have earned from the date she was unlawfully terminated to the date the first judgment is entered. *Daniel v. Loveridge*, 32 F.3d 1472, 1477 (10th Cir. 1994).

Ms. Cotrina's back pay should be calculated beginning at her hourly rate in 2017 of $15.05 per hour, at forty hours per week. *See D. Cotrina Affidavit* ¶ 5-6. Ms. Cotrina earned a yearly wage increase of $0.30 to $0.35 per hour, so her back pay for 2018 should be calculated at a rate of $15.35 per hour, at forty hours per week. Her back pay for 2019 and 2020 should similarly reflect a pay increase of at least $0.30 per hour, which would increase her pay rate to $15.65 for 2019 and $15.95 for 2020. This calculation yields back pay of $23,116.80 for the remaining 192 workdays of 2017, $30,454.40 for 2018, $31,049.60 for 2019, and $29,092.80 through the end of November 2020. Ms. Cotrina also earned a yearly bonus of $500.00. She would have received that bonus in 2017, 2018, and 2019. This brings Ms. Cotrina's back wages to a total of $115,213.60.

**Compensatory and Punitive Damages**

Compensatory damages are available under 42 U.S.C. § 1981a(b)(3) to compensate for "emotional pain, suffering, inconvenience, mental anguish, [and] loss of enjoyment of life[.]" In a similar disability discrimination case, a District Court in Utah awarded the statutory cap compensatory damages after the plaintiff filed a motion for default judgment. *Hart v. Connected Wireless, Inc.*, No. 2:17-CV-186-TS, 2020 WL 6710426, at *5 (D. Utah Nov. 16, 2020). There, the court found the plaintiff met his evidentiary burden on a motion for default by showing his employer was aware of his disability and requests for accommodation, and rather than provided reasonable accommodations the employer instead treated him with a hostility that "profoundly impacted his physical and mental wellbeing for years since." *Id.* At 6.

Ms. Cotrina similarly has experienced significant emotional distress of insomnia, auditory and visual hallucinations, loss of enjoyment, inability to focus, stress, agoraphobia, memory loss, and inability to perform basic hygiene tasks for years. *See D. Cotrina Affidavit* ¶ 7-19, 23; *M. Sarria Affidavit* ¶ 5-13; *Dr. Bailey Affidavit* ¶ 23, 27-31. This level of emotional pain and anguish merits a substantial award of compensatory damages. *See e.g. Dodoo v. Seagate Tech., Inc.*, 235 F.3d 522, 532 (10th Cir. 2000) (affirming $125,000 award where plaintiff "testified that he has trouble sleeping and wakes up with his heart pounding, not knowing where he is."); *Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1416 (10th Cir. 1997) (upholding $200,000 award where plaintiff's harm included "nausea, migraines, humiliation, degradation, loss of self-respect, sleeplessness, consumption of sleeping pills, frequent crying, loss of a loan officer career, and stress in Plaintiff's relationship with her daughter").

Her mental distress is attributable to the actions of her supervisors who were aware of her disabilities and need for accommodation and instead mocked her on a near daily basis. The symptoms caused by her supervisors were unique in their persistence and severity, and therefore distinguishable from pre-existing symptoms. *Dr. Bailey Affidavit* ¶ 29-30. The supervisory position held by Ms. Cotrina's harassers increases the severity of their conduct and merits a higher award. *See EEOC v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 329 (4th Cir. 2010) (jury could find that harassment's severity was exacerbated because the harasser was the immediate supervisor and sole owner of the medical clinic).

The ADA allows Ms. Cotrina to seek punitive damages against an employer who has committed intentional discrimination "with malice or with reckless indifference" to the plaintiff's

civil rights. 42 U.S.C. § 1981a(b)(1). Here, proving malice or reckless indifference entails proving that a defendant either knew its actions constituted illegal discrimination, or acted "in the face of a perceived risk that its actions [would] violate federal law". *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). Dr. Bailey called Cookietree and stated that the actions of Ms. Cotrina's supervisors were discriminatory. This and the written accommodation requests show that Cookietree was aware of the ADA and reasonable accommodation requirements of the law. *See* Compl. Dkt. #2 at ¶¶ 28-29, 42-43, 47, 49-50, 58.

A plaintiff seeking punitive damages must also establish vicarious liability, and one way to accomplish this is "to establish that the employer's agent committed a wrong while (1) 'serving in a managerial capacity'; and (2) 'acting in the scope of employment.'" *E.E.O.C. v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1247 (10th Cir. 1999). As the floor supervisor and line leads, the individuals who discriminated against Ms. Cotrina were employed in a managerial capacity. *See* Compl. Dkt. #2 at ¶¶ 23-24, 28-29, 33-35, 56-58. The discriminatory acts were taken in the scope of their employment on location during working hours, and included actions pursuant to their authority such as assignation of duties meant to exacerbate Ms. Cotrina's symptoms. *See* Compl. Dkt. #2 at ¶¶ 28-29, 33-37, 47, 56-58.

The statutory cap for a combined award of compensatory and punitive damages for an employer of more than 200 and fewer than 501 employees is $200,000. 42 U.S.C. § 1981a(b)(3)(C). Awards up to the statutory cap have been granted even in default judgment. *See e.g. Hart v. Connected Wireless, Inc.* (awarding the capped amount of $50,000 in compensatory and punitive damages for a company of more than 14 and fewer than 101 employees).

RESPECTFULLY SUBMITTED this the 9TH day of FEBRUARY 2024.

                                              DISABILITY LAW CENTER

                                              */s/ Lakshmi Vanderwerf*
                                              Lakshmi Vanderwerf
                                              Mary Anne Davies
                                              Maya Anderson
                                              Nate Crippes

                                              *Attorneys for Plaintiff*

MOTION FOR DEFAULT JUDGMENT
PAGE | 11