IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARIA COTRINA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COOKIETREE LLC,<br><br>　　　　Defendant. | **ORDER GRANTING<br>DEFAULT JUDGMENT**<br><br>2:23-cv-00769-TC<br><br>Judge Tena Campbell |

　　　　Plaintiff Maria Cotrina filed this action on October 24, 2023, alleging four counts of discrimination in violation of the Americans with Disability Act (ADA). (See Compl., ECF No. 2.) She provided the court with proof of service demonstrating that a process server served Defendant CookieTree LLC (CookieTree) by delivering a copy of the summons and complaint to CookieTree's registered agent on file with the State of Utah. (See Proof of Service, ECF No. 5.) CookieTree did not answer or otherwise respond. Accordingly, Ms. Cotrina moved for entry of default (ECF No. 6) and the clerk entered default against CookieTree on December 12, 2023. (Entry of Default, ECF No. 7.)

　　　　Ms. Cotrina now moves for default judgment (ECF No. 11). She requests $115,213.60 in damages representing back pay and $200,000.00 in compensatory and punitive damages, which is the statutory cap. The court held a hearing on the motion on April 17, 2024. (See Min. Entry, ECF No. 18.) Ms. Cotrina provided the court with several affidavits attached to her order, on which the court principally relies to set forth the facts of the case—supplemented where

necessary by facts alleged in the Complaint and explained in the Proposed Determination and Order issued by the Utah Antidiscrimination and Labor Division (UALD) (ECF No. 11-2).

## BACKGROUND

Ms. Cotrina began to work for CookieTree in 2007 as a production line assistant, where her duties included inspecting trays of frozen cookies and feeding them into the oven conveyor. (Aff. Maria Cotrina ¶¶ 4, 6, ECF No. 11-4; UALD Proposed Determination 2.) Ms. Cotrina suffers from schizoaffective disorder (bipolar type), anxiety, and depression. (Cotrina Aff. ¶ 2; Aff. ElLois Wilson Bailey ¶ 12, ECF No. 11-5.) From 2013 to 2018, her mental health provider was Dr. ElLois Wilson Bailey, who submitted an affidavit describing how she filled out Family and Medical Leave Act (FMLA) paperwork for Ms. Cotrina and submitted reasonable accommodation requests to her employer to manage her symptoms. (Cotrina Aff. ¶ 12; Bailey Aff. ¶¶ 10, 13, 16–17.)

In approximately May 2015, Ms. Cotrina was supervised by line lead Colton Goodfellow, floor supervisor Felipe Martinez, and—intermittently—by fellow production line assistant Carlos Navarette. (Compl. ¶¶ 23–24; see UALD Proposed Determination 2.) Mr. Navarette forbid production line assistants from speaking in their native languages, which Ms. Cotrina (a Spanish speaker) states worsened her stress and anxiety. (Cotrina Aff. ¶¶ 11–12; UALD Proposed Determination 2.) She was denied permission to use the bathroom—even though she was taking a medication that caused her to need the restroom suddenly and urgently—, which on one occasion led to her defecating in her clothes while on the production line. (Cotrina Aff. ¶ 14.)

On February 24, 2017, Ms. Cotrina injured her knee and asked to leave work to seek medical attention. (Cotrina Aff. ¶ 16; UALD Proposed Determination 3.) Mr. Martinez told her

to speak with Mr. Goodfellow, who allegedly said: "Are you crazy? Go back to work." (UALD Proposed Determination 3; Compl. ¶¶ 33–37.) She was assigned to work at the ovens, a position that required frequent squatting. (Cotrina Aff. ¶ 17.) After she asked to be moved to a less strenuous position, Mr. Goodfellow told her to "stay there" and that "maybe [the pain would] go away." (Compl. ¶ 40.) Around this time, Mr. Martinez and Mr. Navarette began telling her co-workers that Ms. Cotrina was on antipsychotic medications and was "crazy." (Cotrina Aff. ¶ 13; UALD Proposed Determination 2–3; Compl. ¶ 42.) She asserts that she was called "crazy" every day. (Cotrina Aff. ¶ 19; Compl. ¶ 43.)

On March 17, 2017, after two weeks of tests and MRIs, Ms. Cotrina was diagnosed with a torn meniscus. (UALD Proposed Determination 3; Compl. ¶¶ 44–51.) She was then assigned to clerical work in the office but was shortly thereafter transferred back to the production line. (UALD Proposed Determination 3; Compl. ¶¶ 53–54.)

On March 23, 2017, Ms. Cotrina asked her supervisors for a day off to see her mental health provider, Dr. Bailey. (Compl. ¶ 58.) Mr. Goodfellow and Mr. Martinez denied this request and told her that she would be fired if she left. (Id.) Nevertheless, Ms. Cotrina felt she had to see her doctor and left for the day. (Id. ¶ 59.) CookieTree told her not to return until her knee injury was fully recovered. (UALD Proposed Determination 3.) Ms. Cotrina believed she was terminated from work at that time. (Cotrina Aff. ¶ 22.)

After seeing Ms. Cotrina, Dr. Bailey contacted CookieTree with documentation asking that Ms. Cotrina's leave under the FMLA be extended until June 1, 2017. (Bailey Aff. ¶ 24; UALD Proposed Determination 4.) Dr. Bailey told CookieTree that its actions were discriminatory. (Bailey Aff. ¶ 21.) Dr. Bailey also helped Ms. Cotrina apply for short-term

disability. (Id. ¶ 24.) On June 9, 2017, CookieTree extended Ms. Cotrina's unpaid leave for an additional 90 days but did not inform Ms. Cotrina of this decision. (UALD Proposed Determination 5; Cotrina Aff. ¶ 23.) On July 9, 2017, Ms. Cotrina began long-term disability leave through Lincoln Financial Group, a benefit she received through her employment. (Compl. ¶ 69.)

On December 26, 2017, CookieTree sent Ms. Cotrina a letter stating that her failure to return to work by January 26, 2018, would result in her termination. (UALD Proposed Determination 5.) But Ms. Cotrina did not receive this letter and did not live at the address where the letter was sent. (Cotrina Aff. ¶ 23.) CookieTree asserts that it terminated Ms. Cotrina's employment on January 29, 2018. (UALD Proposed Determination 5.)

Ms. Cotrina has not worked since she left CookieTree and she states that her mental health has deteriorated. (Cotrina Aff. ¶¶ 35–36; Compl. ¶ 77.) She and her husband lost their home and moved to Florida to be closer to family. (Cotrina Aff. ¶ 34.)

Ms. Cotrina filed a charge of discrimination with the Utah Antidiscrimination and Labor Division (UALD) on June 7, 2017. (UALD Proposed Determination 1.) The UALD issued a reasonable cause finding, stating that while Ms. Cotrina had failed to state a claim for termination, retaliation, or failure to provide reasonable accommodation, Ms. Cotrina had nevertheless alleged facts sufficient to support a claim for harassment due to a hostile work environment. (Id. at 5–12.)

## LEGAL STANDARD

Entry of a default judgment under Rule 55 of the Federal Rules of Civil Procedure is a two-step process. See Meyers v. Pfizer, Inc., 581 F. App'x 708, 710 (10th Cir. 2014). If a

4

defendant fails to timely respond to the complaint after proper service, a plaintiff may request entry of a default by the court clerk, who then decides whether to enter a default. Id. (citing Fed. R. Civ. P. 55(a)). "If the clerk enters a default, the plaintiff can ask the court to grant a default judgment." Id. (citing Fed. R. Civ. P. 55(b)(2)).

A trial court has broad discretion in deciding whether to enter a default judgment. Galloway v. Hadl, No. 07-3016-KHV, 2008 WL 5109758, at *1 (D. Kan. Dec. 2, 2008) (citing Grandbouche v. Clancy, 825 F.2d 1463, 1468 (10th Cir. 1987)). Furthermore, a plaintiff must establish that the amount of requested damages is reasonable under the circumstances. DeMarsh v. Tornado Innovations, L.P., No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009). "Damages may be awarded only if the record adequately reflects the basis for [the] award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" Id. (quoting Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985)).

## ANALYSIS

Ms. Cotrina moves the court to enter judgment in the amount of $115,213.60, representing her lost backpay, as well as an additional $200,000.00 in compensatory and punitive damages. After carefully considering the evidence in the record and the argument presented at the hearing, the court finds that both amounts are reasonable.

### I. ADA

The ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" regarding hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified

individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  To prevail on an ADA claim, a plaintiff must establish: "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability."  MacKenzie v. City & Cnty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005), abrogated on other grounds by Lincoln v. BNSF Ry. Co., 900 F.3d 1166 (10th Cir. 2018).

Under the ADA Amendments Act of 2008 (ADAAA), the definition of disability was expanded to include:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1).  Paragraph 3, in turn, provides:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3).

CookieTree is a covered entity under the ADA.  (See Cotrina Aff. ¶ 5 (alleging that CookieTree has over 200 employees).)  And Ms. Cotrina has provided ample evidence that she was regarded as having a disability.  She was called "crazy" on a daily basis, and her supervisors told her co-workers that she was taking anti-psychotic medications.  (See, e.g., Cotrina Aff.

¶¶ 13, 19.)  The court therefore need not address whether Ms. Cotrina also has an impairment that substantially limits one or more major life activities.

## II. Hostile Work Environment

A plaintiff may assert that she was subjected to a hostile work environment in violation of the ADA.  See Lanman v. Johnson Cnty., Kan., 393 F.3d 1151, 1155 (10th Cir. 2004), superseded on other grounds by ADA Amendments Act of 2008, 42 U.S.C. § 12101, et seq. (no longer requiring plaintiffs to show an impairment that substantially limits one or more major life activities).  To establish a hostile work environment claim, a plaintiff must prove the following elements:

> (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on [the alleged disability]; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.

Harsco Corp. v. Renner, 475 F.3d 1179, 1186 (10th Cir. 2007).

The court finds that Ms. Cotrina has sufficiently demonstrated these elements.  As discussed above, her supervisors called her "crazy" on a daily basis and told her co-workers about her medication.  After she was injured, her supervisors assigned her a more strenuous position at the ovens. (Cotrina Aff. ¶ 17.)  Her injuries were not treated seriously, and she was allowed only a short time performing clerical work before she was ordered back to the production line.  (UALD Proposed Determination 3.)  Finally, these conditions had persisted for some time, including one instance when Mr. Cotrina was not allowed to use the bathroom and defecated on the production line.  (Cotrina Aff. ¶ 14.)

Accordingly, the court finds that Ms. Cotrina was forced out of her job due to severe and pervasive harassment based on her perceived mental impairments. Because the court finds in Ms. Cotrina's favor on this claim, it need not address her remaining claims for termination, retaliation, and failure to provide reasonable accommodation in violation of the ADA.

### III. Back Pay

The ADA allows a successful plaintiff to collect their back pay as an award. 42 U.S.C. § 2000e-5(g). At the hearing, the court clarified that Ms. Cotrina was seeking back pay from the date she believes she was terminated (March 23, 2017) until she began receiving Social Security benefits in November 2020. Given CookieTree's failure to send Ms. Cotrina any communications to her home (see Cotrina Aff. ¶ 23 (averring that a December 26, 2017 letter from CookieTree was sent to an address where she had never lived)), the court finds that a termination date of March 23, 2017—the last day that Ms. Cotrina worked at CookieTree—is reasonable. Ms. Cotrina states that she earned a yearly wage increase of $0.30 to $0.35 per hour. (Cotrina Aff. ¶¶ 5–8.) The court therefore agrees that a reasonable rate to calculate Ms. Cotrina's back pay should be $15.35 per hour for the remainder of 2018, $15.65 per hour for 2019, and $15.95 for 2020. Including a yearly bonus of $500.00, Ms. Cotrina is therefore entitled to back pay in the amount of $115,213.60.

### IV. Compensatory and Punitive Damages

Ms. Cotrina seeks both compensatory and punitive damages. Compensatory damages are available under 42 U.S.C. § 1981a(b)(3) to compensate for "emotional pain, suffering, inconvenience, mental anguish, [and] loss of enjoyment of life[.]" A plaintiff may recover punitive damages if the unlawful discrimination was intentional and the employer engaged in the

discriminatory practice with "malice or with reckless indifference[.]" 42 U.S.C. § 1981a(b)(1). Proving malice or reckless indifference requires a plaintiff to show that a defendant either knew its actions constituted illegal discrimination or acted "in the face of a perceived risk that its actions [would] violate federal law." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999). A plaintiff seeking punitive damages must also establish vicarious liability; one way to do so is "to establish that the employer's agent committed a wrong while (1) serving in a managerial capacity; and (2) acting in the scope of employment." Equal Emp. Opportunity Comm'n v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1247 (10th Cir. 1999) (cleaned up). For employers with more than 200 but less than 501 employees, there is a statutory cap on the combined sum of compensatory and punitive damages of $200,000. See 42 U.S.C. § 1981a(b)(3)(C).

The court finds that an award of $200,000 is justified. Ms. Cotrina has stated that CookieTree's actions caused her significant emotional distress, including insomnia, visual hallucinations, stress, memory loss, and inability to perform basic hygiene tasks for years. (Cotrina Aff. ¶¶ 7–19, 23–24.) These claims are corroborated by affidavits submitted by Ms. Cotrina's husband and her sister. (Aff. David Cotrina, ECF No. 11-6; Aff. Milagro Sarria, ECF No. 11-7.) Her sister avers that Ms. Cotrina "wouldn't bathe" after she was fired, that "she would leave the water faucets on[,]" and that she "cried often." (Sarria Aff. ¶¶ 7–9.)

Moreover, CookieTree was aware of Ms. Cotrina's condition and of the way the actions of Ms. Cotrina's supervisors exacerbated her impairments because Dr. Bailey "personally contacted Ms. Cotrina's employer … to report harassing behavior …." (Bailey Aff. ¶ 18.) Because Ms. Cotrina's harassers were her supervisors, Ms. Cotrina has established vicarious liability and also demonstrated that she merits a higher award. See Equal Emp. Opportunity

Comm'n v. Fairbrook Med. Clinci, P.A., 609 F.3d 320, 329 (4th Cir. 2010) (holding that jury could find more severe harassment because the harasser was the plaintiff's immediate supervisor).

Courts have previously found that the statutory cap was an appropriate award for a high level of emotional pain and anguish. See, e.g., Smith v. Nw. Fin. Acceptance, Inc., 129 F.3d 1408, 1416 (10th Cir. 1997) (upholding $200,000 award where the plaintiff's harm including "nausea, migraines, humiliation, degradation, loss of self-respect, sleeplessness, consumption of sleeping pills, frequent crying, loss of a loan officer career, and stress in Plaintiff's relationship with her daughter"). Courts have granted awards up to the statutory cap even in default judgment. See, e.g., Hart v. Connected Wireless, Inc., No. 2:17-cv-186-TS, 2020 WL 6710426, at *6 (D. Utah Nov. 16, 2020).

For these reasons, the court awards Ms. Cotrina $200,000 in compensatory and punitive damages. The court's total award is therefore $315,213.60.

## ORDER

For the foregoing reasons, the court GRANTS Ms. Cotrina's motion for default judgment (ECF No. 11) and awards her damages of $315,213.60.

DATED this 17th day of May, 2024.

BY THE COURT:

*Tena Campbell*
Tena Campbell
United States District Judge